IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KASEY L. SHEPARD,

        Plaintiff,

v.                                        Case No.  25-4124-JWB

TRANSUNION LLC,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to dismiss.  (Doc. 10.)  The motion is fully briefed and ripe for decision.  (Docs. 10, 13, 14.)  The motion is TAKEN UNDER ADVISEMENT for the reasons stated herein.

## I.    Facts

The following facts are taken from Plaintiff's amended complaint.[1]  (Doc. 6.)  The court presumes their truth for the purposes of this order.  Plaintiff Kasey L. Shepard ("Plaintiff" or "Ms. Shepard") is a resident of the State of Kansas.  She brings this action under the Fair Credit Reporting Act ("FCRA") against Defendant TransUnion LLC ("Defendant" or "TransUnion").  (Doc. 6 at 1, 4-5.)  "On several occasions" TransUnion apparently placed inaccurate information on Plaintiff's credit report.  (Doc. 6 at 2.)  Plaintiff disputed this information.  (*Id.*)  More specifically (but not that much more), Plaintiff claims that "accounts reported by Midland Credit Management, LVNV Funding, and First Premier Bank" appeared on her credit report.  (*Id.* at 2.)

---

[1] Plaintiff filed an "Amended Statement of Claim" one day after initiating her lawsuit, that she explained "Supersedes Prior Statement of Claim in Full."  (Doc. 6 at 1.)  The court construes this as Plaintiff's one amended complaint as a matter of right under Fed. R. Civ. P. 15 (a)(1)(A).  The court will consider only (Doc. 6) in resolving the motion to dismiss.

1

Plaintiff says she notified Trans Union of these accounts, and disputed them in a "clear, detailed" fashion.  (*Id.*)  Her disputes were "supported by factual explanations identifying inaccurate dates, contradictory account information, and reporting that could not be verified."  (*Id.*)  According to Plaintiff, even though Defendant received multiples notices, "TransUnion failed to correct or delete the inaccurate information and instead continued reporting the accounts as adverse."  (*Id.*)  Plaintiff also alleges that TransUnion "reported inaccurate and misleading" opening and removal dates for "debt buyer tradelines" which made the accounts appear more recent. (*Id.*)  "[A]ccounts that originated years earlier were reported with new 'Date Opened' dates assigned by debt buyers in 2023, with estimated removal dates extended into 2029, despite the original delinquencies occurring years before."  (*Id.*)  This "artificially extended the length of time the account appeared on Plaintiff's credit file and falsely suggested recent activity, a practice commonly known as illegal re-aging."  (*Id.*)  According to Plaintiff, TransUnion never verified the original date of delinquency or the "lawful reporting period."  (*Id.*)  Moreover, TransUnion continued reporting these accounts after Plaintiff's disputes and after TransUnion said they had been investigated.  (*Id.* at 3.)

Plaintiff claims that "[r]ather than verifying the accuracy of the disputed information, TransUnion repeatedly updated cosmetic fields such as remarks, ratings, or internal data while leaving the core inaccuracies intact."  (*Id.*)  Defendant TransUnion "failed to obtain or review competent evidence establishing the original date of first delinquency, lawful reporting period, or accuracy of the reported dates."  (*Id.*)  This is allegedly a failure to conduct "a reasonable reinvestigation" as required by the FCRA.  (*Id.*)

But Plaintiff further alleges that after her disputes, "certain tradelines were deleted or suppressed from" her credit report.  (*Id.*)  Following this, TransUnion did not "maintain accurate

records of Plaintiff's dispute history, could not account for prior investigations, and admitted through its agents that dispute records and investigation results were missing or unavailable." (*Id.*) This failure to "ensure consistent and accurate reporting following deletions" is apparently evidence of "systemic recordkeeping and accuracy failures." (*Id.*) "Plaintiff requested disclosure of the method of verification used to confirm the accuracy of the disputed accounts." (*Id.* at 4.) TransUnion refused this request and "admitted through its agents that investigations relied only on internal notes or furnisher responses, rather than independent verification." (*Id.*)

Plaintiff alleges that the "repeated disputes, regulatory complaints, and clear notice of inaccuracies" indicates willfulness and "reckless disregard for its statutory duties under the FCRA." (*Id.*) Plaintiff raises two counts, both for violations of the FCRA as codified at 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. (*Id.* at 4-5.) Plaintiff claims she "suffered actual damages including but not limited to damage to creditworthiness, denial of credit opportunities, emotional distress, and an extended duration of harm caused by illegal re-aging." (*Id.* at 5.) Plaintiff also seeks "statutory damages, actual damages, punitive damages, costs, and attorney's fees" because of TransUnion's alleged willful or negligent conduct. (*Id.*) Finally, Plaintiff requests a declaratory judgment that TransUnion violated the FCRA. (*Id.*)

Defendant TransUnion has moved to dismiss on multiple grounds and contends Plaintiff has failed to state a claim upon which relief can be granted. (Doc. 10.) One argument Defendant makes disputes whether Plaintiff has adequately pled a concrete harm sufficient to give her standing under Article III of the United States Constitution. (*Id.* at 8-9.) The court addresses this argument first, as it implicates the court's jurisdiction and hence, its power to decide the case. Following consideration of the parties' arguments on this point below and the resulting analysis, the court considers it unnecessary to evaluate the rest of Defendant's arguments for dismissal.

## II.    Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  Given Plaintiff's pro se status, the court construes her pleadings liberally, but it cannot act as her advocate or construct arguments on his behalf.  *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

## III.    Analysis

Article III of the Constitution limits the jurisdiction of the federal courts to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States" and certain "Controversies."  U.S. Const. art. III, § 2.  Imbued within this limitation is the requirement that plaintiffs have "standing" to bring their claim.  *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.") (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  This "irreducible constitutional minimum" is evaluated by assessing three elements of Plaintiff's claim.  *Id.*  Standing requires that Plaintiff: (1) have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) that injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court";

4

and (3) "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal citations, modifications, and quotation marks omitted) (cleaned up).

Defendant TransUnion is no stranger to the standing inquiry, being party to one of the most seminal standing decisions ever issued by the Supreme Court. *TransUnion L.L.C. v. Ramirez*, 594 U.S. 413 (2021). In *TransUnion*, the Court held that when TransUnion produced "misleading credit reports to third-party businesses" those particular plaintiffs in the class action had standing. *Id.* at 417. By contrast, it held that other members of the class, who had misleading "internal credit files" but those files "were not provided to third-party businesses", lacked standing. *Id.* Additionally, the court held that class members' complaint about "formatting defects in certain mailings sent to them by TransUnion" could not proceed because they could not demonstrate that the errors "caused them any concrete harm." *Id.* at 418.

To determine whether a harm is sufficiently "concrete" the Court explained that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts. *Id.* at 424 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). A plaintiff must identify "a close historical or common-law analogue for their asserted injury" though the test "does not require an exact duplicate." *Id.* Tangible monetary harms obviously satisfy the standing inquiry. *Id.* at 425. But reputational harms are what governed the Court's decision in *TransUnion*. *Id.* at 432. In that case, *TransUnion* had allegedly placed OFAC alerts on the plaintiff's credit file that mistakenly labeled them as potential terrorists. *Id.* at 431. The Court held that the publication of these mistaken credit reports to third-party businesses constituted an injury sufficiently analogous to defamation to confer Article III standing. *Id.* at 432. Plaintiffs who did not have their credit file published to a

third-party, did not have standing to sue, even though their files still "contained misleading OFAC alerts." *Id.* at 433. According to the Supreme Court "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 434 (quoting *Owner-Operator Indep. Drivers Ass'n v. United States Dep't of Transp.*, 879 F.3d 339, 344-45 (D.C. Cir. 2018)). The Court also rejected the argument that the mere presence of incorrect information in a person's credit file constituted an "imminent" threat of future harm that would suffice for standing to pursue damages. *Id.* at 435-37. As to the other "bare procedural violation[s], divorced from any concrete harm" that the plaintiffs in *TransUnion* alleged, the Court rejected them for the same reasons, the plaintiffs could not identify a "harm with a close relationship to a harm traditionally recognized a providing a basis for a lawsuit in American courts." *Id.* at 440. (quoting *Spokeo*, 578 U.S. at 341 (internal quotation marks omitted) (modification in original)).

In this case, the court finds that even if Plaintiff has alleged a violation of the FCRA she has thus far failed to identify with any kind of detail what harm she suffered as a result. While her complaint lists "damage to creditworthiness, denial of credit opportunities, [and] emotional distress" as possible injuries, there are no facts alleged to support the who, what, where, when, why, and how of Plaintiff's injuries. (Doc. 6 at 5.) It is insufficient to merely recite kinds of injuries that could provide a basis for a lawsuit. Those injuries must be alleged alongside facts that, if true, show an injury occurred as a result of Defendant's conduct. Were the rule otherwise, courts could hand out standing to sue the way Costco hands out free samples. But Article III rejects such "freewheeling" and demands more careful limits to maintain the separation of powers; federal courts may only adjudicate cases to redress actual or imminent harms. *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assoc.*, 926 F.3d 329, 332 (7th Cir. 2019) (per

Barrett, J.)).  For example, Plaintiff provides no details about any times that she was denied a credit opportunity because of TransUnion's conduct.  This is true of all Plaintiff's alleged harm; Plaintiff does not plead facts showing harm or the harm's connection to TransUnion's conduct.  Because Plaintiff does little more than list possible harm, untethered from any supporting facts, at this stage, Plaintiff's complaint is insufficient and would be dismissed.  Still, given Plaintiff's pro se status, the court will permit her to amend her complaint to clarify the harm she suffered.

## IV.     Conclusion

As explained above, Plaintiff may amend her complaint.  She has 30 days from the entry of this order to file an amended complaint.  If she does not so file, this case will be dismissed in accordance with the rationale in this order.  If Plaintiff files an amended complaint within 30 days, the court will deny Defendant's motion to dismiss as moot and permit Defendant to either answer or file a renewed motion to dismiss within 30 days of the filing of the amended complaint.  For the foregoing reasons, Defendant's motion to dismiss is TAKEN UNDER ADVISEMENT.  (Doc. 10.)

IT IS SO ORDERED.  Dated this 14th day of April, 2026.


s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE